ISAAC TINDAL, n. *vs.* DANIEL HUDSON.

Free negroes cannot hold slaves in Delaware.  A father cannot hold his own children in slavery.

PETITION for freedom.  The petitioner's father, George Long, was a free negro, legally married to Phœbe, the mother of Isaac, who was the slave of a certain Conoway.  Isaac was born while his mother was a slave; and whilst an infant he was purchased by his father, George Long, of Conoway's representatives.  His father never manumitted him; but, on the contrary, by will bequeathed him to Minos Tindal, until he should attain the age of twenty-five years.  Minos Tindal took possession of Isaac; who, at the death of his master, was sold by the executor to Daniel Hudson.

The cause was argued by *Cullen* for the petitioner and *Ridgely* for the respondent.

*Per Curiam:*

J. M. CLAYTON, *Chief Justice.*—Two questions arise in this case, both of which are novel and interesting.  The first is, whether a free negro in this state can hold a slave; the second, whether a father can hold his own children in slavery.

In order properly to understand the first question, it becomes necessary to consider slavery as it has always existed in this state. We pass no opinion on slavery in the abstract; its policy as an institution is not before the court.   We shall contemplate it as it exists, and we observe one general and pervading feature, *that the black is the slave to the white man;* this feature has always characterized it here.   The origin of slavery will always be traced to conquest: the two races are marked by very striking differences; and, as the one

has subjected the other, so will it alone hold that race in subjection by the strong arm of force. Were the negro race the stronger it would subjugate the white; and the master now, would in his turn become the slave. Such being the fact, and slaves being fully recognized by our law as *property*, we shall continue so to consider them until the legislature alters the law. But while this court will guard the rights of masters over the slave population, it will not extend slavery beyond what it has been heretofore. If a negro has not by the usages and customs of this state held slaves, this court will not institute a new species of slavery, and decree that he can do so; and we think that to give the free negro a right to hold slaves, would be to institute another and a dangerous species of slavery hitherto unknown. The free negro cannot, in this country, base his right to hold slaves upon the principle of conquest. He is not of a different race of men who by the sword have subjugated their fellow men; but he finds among the slave population his brethren in blood, color, feelings, education and principle; they are of the same race with him, and have never been in subjection to him. Another and a strong reason beyond the mere question of policy why the free negro should not hold slaves is, that between the master and slave there must exist mutual and reciprocal obligations and duties, the slave owing obedience and fidelity to his master, and the master owing to the slave support and protection. But the negro is not such a freeman as to extend protection; he is though nominally free, almost as helpless and dependent on the white race as the slave himself; he has few civil rights, being merely protected in his person and property by the law, and being allowed in some cases to give his evidence in a court of justice. He can hold no office of honor, trust or profit; cannot act as a juror or legislator, cannot make or execute laws. He cannot, therefore, in any sense extend to a slave the protection due from a master, having no voice in the making, altering, enforcing or executing the laws; and having himself constantly to resort to the protection of the whites.

We think, therefore, that neither usage, policy, nor the necessary relations of master and slave, will permit free negroes in this state to hold slaves.

On the other point also, the court have a clear conviction that we ought not to recognize the right of a father to hold his own children in slavery. Humanity forbids it. The natural rights and obligations of a father are paramount to the acquired rights of the master; and the moment the father purchases his child and these rights become blended in the same person, the lesser rights and obligations are merged in the greater, and the child is free. It is no more master and

slave; but parent and child.    Humanity revolts at the idea of a parent selling his own children into slavery.

We think the petitioner entitled to his freedom.

Decreed accordingly.

*Cullen*, for petitioner.

*Ridgely*, for respondent.